HOWARD J. CASHMAN ET AL. *v.* FRANK CALVO ET AL. (12497)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued April 3—decision released June 18, 1985

---

*James J. Scalise,* with whom, on the brief, was *Stefan J. Ludwikow,* for the appellants (defendants).

*Nicholas E. DeNigris,* for the appellees (plaintiffs).

SHEA, J. This action was brought by the plaintiff home buyers for breach of the warranties provided by General Statutes §§ 47-117 and 47-118 concerning the construction of a home the plaintiffs purchased from the defendant builders. The case was tried to the court, *Doyle, J.,* which found the issues for the plaintiffs and rendered judgment accordingly. The defendants appealed, claiming that the trial court erred in denying their motion to dismiss based on the absence of subject matter jurisdiction due to the alleged expiration of the applicable statute of limitations and in finding the evidence adequate to support recovery as to two of the claimed defects relied upon to prove the breach of warranty. We find no error.

The trial court found from undisputed evidence that the plaintiffs, Howard J. Cashman and Helene M. Cashman, had purchased a new one-family dwelling in Berlin from the defendants, Thomas R. Farr, Esther A. Farr, and Frank Calvo. The purchase price and a warranty deed were exchanged on July 12, 1979. The plaintiffs notified the defendants of certain alleged defects in the residence on or about February 13, 1980. The plaintiffs commenced this action on February 2,

1981, for breach of the express and implied warranties created by General Statutes §§ 47-117 and 47-118. The express warranty claims were dismissed for failure to make out a prima facie case after the plaintiffs had rested; Practice Book § 302; and only the implied warranty claims are involved in this appeal.

The claim of error in the denial of the motion to dismiss for lack of subject matter jurisdiction is based upon the defendants' interpretation of § 47-118 (e), which limits the duration of the implied warranties created by the statute. The defendants argue that the language of § 47-118 (e) providing that the implied warranties relied upon by the plaintiffs shall "terminate," in this case one year after delivery of the deed on July 12, 1979, is also a statute of limitations defining the period beyond which no action may be brought on the warranties. They maintain that, because § 47-118 creates liability unknown at common law, the limitation is jurisdictional; *Diamond National Corporation* v. *Dwelle*, 164 Conn. 540, 543, 325 A.2d 259 (1973); and, on the face of the complaint, has been exceeded by commencement of the suit on February 2, 1981, more than one year after the sale on July 12, 1979.

We agree with the trial court that the one year period allowed by § 47-118 (e) does not limit the period within which an action based on the implied warranties provided by the statute must be brought. The one year period from the delivery of the deed or the taking of possession is a limitation upon the period within which an action for breach of warranty may arise, not within which it must be commenced.[1] While this distinction

[1] In this context, we consider a cause of action under General Statutes § 47-118 to arise when the purchasers discover that a breach of the warranties entitling them to recompense has occurred. This interpretation is consistent with § 47-118 (b), which limits the warranties to only those defects not apparent to a reasonably diligent purchaser at the time of the contract of sale. If the defect becomes reasonably discoverable within the one year term provided by § 47-118 (e), the purchaser may claim a breach of the war-

is made more explicit in the Maryland statute from which § 47-118 is derived; see 18 H. R. Proc., Pt. 10, 1975 Sess., p. 4900 (remarks of Rep. Martin B. Burke); Md. Real Prop. Code Ann. § 10-204 (1985); we consider our statute plainly to dictate the same result. "It is a cardinal rule of construction that statutes are to be construed so that they carry out the intent of the legislature. This intent is to be ascertained from the language of the statute itself, if the language is plain and unambiguous." *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375, 279 A.2d 561 (1971). Section 47-118 (e) provides only that "[t]he implied warranties created in this section shall terminate" upon the expiration of the one year period, not that no action may be brought upon them subsequent to that time.[2] It would be inconsistent with the one year duration of the warranties provided by the statute to require that a suit for breach thereof be commenced within the same period. Even where the utmost diligence is exercised, some time must inevitably lapse between the accrual of a cause

ranty, and the action on that breach, like any other action, need not be brought immediately, but only before it is barred by some statutory limitation. Because the issue has not been raised by the defendants, we need not focus on the necessity of notice to the defendants within a reasonable time after the breach is discovered; cf. General Statutes § 42a-2-607 (3) (a); though we note that the plaintiffs' letter of February 13, 1980, may very well have satisfied any such notice requirement.

[2] It is apparent that the legislature is quite capable of establishing a statutory bar to the commencement of an action by clear and unambiguous language when it so intends. See, e.g., General Statutes § 13a-149 ("No action . . . shall be brought except within . . . ."), § 47-121 ("No action shall be brought . . . but within . . . ."), § 52-555 ("No action shall be brought . . . but within . . . ."), and § 52-576 ("No action . . . shall be brought but within . . . ."). We *do not by this observation intend to engrave in* stone any thaumaturgic formula, conformity to which would be a necessary prerequisite to identification of a provision as a statute of limitations. Rather, we note only that the existence of a recognized and simple means by which to express this intent detracts from the possibility relied upon by the defendants that the language used in § 47-118, the plain meaning of which is entirely consistent with the statutory scheme in which it is found, in fact stands for something easily expressed in more common parlance.

of action and its commencement by service of papers. We see no reason to read into the statute the limitation proposed by the defendants.

In order to bolster their argument that the time limit in § 47-118 must be a restriction upon the time to bring an action for breach of the warranties created by the statute, the defendants point out that there is no other statute of limitations expressly made applicable to such an action. The trial court resolved this problem by opining that the three year limitation contained in General Statutes § 47-121 was applicable,[3] but also noted that, if § 47-121 were inapplicable, the six year limitation of § 52-576 relating to implied contracts would control. See *Cacace* v. *Morcaldi,* 37 Conn. Sup. 735, 741, 435 A.2d 1035 (1981). In either event, this action, brought less than two years after it arose, would not be time-barred. Like the trial court, we perceive no reason to render our advice as to which of these limitations is appropriate or whether that limitation should be characterized as jurisdictional in a case where the resolution of those issues is unnecessary. See *Zoning Commission* v. *Tarasevich,* 165 Conn. 86, 92, 328 A.2d 682 (1973); *Anastasio* v. *Gulf Oil Corporation,* 131 Conn. 708, 719, 42 A.2d 149 (1945). The trial court did not err in denying the defendants' motion to dismiss.

The defendants' remaining claims relate to the adequacy of the evidence establishing breaches of their implied warranties that the front door and the exterior siding of the house were free from faulty materials and constructed in a workmanlike manner. General Statutes § 47-118 (a) (1) and (3). It is familiar law that "[i]t was for the trial court to weigh the evidence and deter-

---

[3] The trial court reasoned that the limitation in General Statutes § 47-121 was applicable to the warranty provisions of § 47-118 based on the observation that both statutes were derived from the same public act; Public Acts 1975, No. 75-637; and should therefore be read together. See *Fava* v. *Arrigoni,* 35 Conn. Sup. 177, 178–80, 402 A.2d 356 (1979).

mine the credibility of the witnesses. This court cannot and will not weigh the evidence contained in the record before us. *Edgewood Construction Co.* v. *West Haven Redevelopment Agency,* 170 Conn. 271, 272, 365 A.2d 819 (1976). If there is sufficient evidence in the record in support of the decision of the trial court such decision must be affirmed." *Pantlin & Chananie Development Corporation* v. *Hartford Cement & Building Supply Co.,* 196 Conn. 233, 237, 492 A.2d 159 (1985).

As to the adequacy of the evidence concerning the workmanship and composition of the exterior siding, the defendants do not question the trial court's finding that shrinkage had occurred and gaps had appeared, necessitating replacement and restaining of substantial portions of the siding. The defendants do question whether the evidence was sufficient to support the trial court's conclusion that this problem manifested itself within the one year period during which the implied warranties ran under § 47-118 and that faulty workmanship and use of inferior materials contributed to the deficiency.

Initially, we note that both Howard Cashman, a plaintiff buyer, and Thomas Farr, a defendant builder, testified that no problems with the siding were apparent at the time of the purchase. See General Statutes § 47-118 (b). Cashman also testified that he informed the defendants of the deterioration of the siding by letter in February, 1980, and that the defendants undertook partial repairs of the exterior siding near the end of March or the beginning of April, 1980, well within the one year warranty period. This testimony was corroborated by the plaintiffs' expert witness, Robert Dietrich, who testified that the problems with the siding probably arose within the time frame suggested by

Cashman,[4] and by the defendant Farr, who admitted the notification and partial repairs as Cashman had testifed. Further, both Dietrich and Emil Carlson, the building inspector for the town of Berlin, testified that the amount of shrinkage and wear they observed in the siding during their respective inspections in November, 1980, and January, 1981, was not normal and probably had been caused by either inferior materials or the failure to install the siding properly and to stain it adequately and thus protect the wood from shrinking. The defendants attempted to counter the plaintiffs' case with evidence that a certain amount of shrinking was inevitable and uncontrollable and that the materials used and techniques employed were generally acceptable in the trade. We cannot conclude that the evidence of breach was insufficient as a matter of law to support the trial court's conclusion that the plaintiffs had proven their case. The trial court had the opportunity to assess the demeanor and credibility of the witnesses and to weigh carefully all of the evidence, as articulated in its memorandum of decision. See *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). We find no error in the conclusion that the defendants breached the implied warranties concerning the workmanship and materials used in installing the exterior siding of the plaintiffs' house.

We reach a similar result with regard to the finding of breach as to the front door. As with the siding, both Cashman and Farr testified that the door appeared to

---

[4] We are aware that Dietrich subsequently modified his testimony on cross-examination, when he stated that he could not give an opinion as to when the defects he observed in November, 1980, became apparent. Neither his direct nor his cross-examination testimony was unequivocal, however, and we consider the court to have been free to believe his initial testimony, especially given his continued insistence that the problems with the house were caused by faulty materials and improper installation. See *Barrila* v. *Blake,* 190 Conn. 631, 639, 461 A.2d 1375 (1983); *Griffin* v. *Nationwide Moving & Storage Co.,* 187 Conn. 405, 422, 446 A.2d 799 (1982).

be free of defects when the plaintiffs took possession. Cashman testified that the problem of the door splitting and warping started during the plaintiffs' first winter in the house and that the defendants were informed and performed partial repairs within the one year period. Again Farr corroborated the evidence of notification and repair. Both Dietrich and Carlson testified that the deterioration of the door was abnormal and was probably caused by either inferior materials or failure properly to finish the wood. The defendants once more offered evidence that their actions and the material used were acceptable in the trade and that a certain amount of wear from exposure to the sun and weather was to be expected and did not indicate any breach on their part. We also find no error in the trial court's conclusion from the evidence that a breach of the implied warranties that the door was free from faulty materials and constructed in a workmanlike manner had occurred.

"This court may reject a factual finding only if it is clearly erroneous, that is, if the finding is 'unsupported by the record, incorrect, or otherwise mistaken.' *Kaplan* v. *Kaplan,* supra, 392; *Garrison* v. *Garrison,* 190 Conn. 173, 176, 460 A.2d 945 (1983); see Practice Book § 3060D; *Reynolds* v. *Soffer,* 190 Conn. 184, 189, 459 A.2d 1027 (1983)." *J. & J. Enterprises of Lenoir, Inc.* v. *Shaw,* 190 Conn. 321, 322, 460 A.2d 1283 (1983). We perceive no such infirmities in the trial court's rulings.

There is no error.

In this opinion the other judges concurred.